### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

ANDY ORTIZ,                              :

                          Plaintiff     :          CIVIL ACTION NO. 3:23-0214

                                        :              (JUDGE MANNION)

              v.                        :

M. SOPATA, *et al.*,                    :

              Defendants     :

### <u>MEMORANDUM</u>

Plaintiff Andy Ortiz, who is incarcerated in the State Correctional Institution at Somerset, Pennsylvania (SCI-Somerset) after transfer from the State Correctional Institution at Dallas, Pennsylvania (SCI-Dallas), files this *pro se* Section 1983 action on November 8, 2022. He asserts First, Eighth and Fourteenth Amendment claims, as well as a state tort claim of intentional infliction of emotional distress, against a multitude of prison officials and inmates, alleging that Defendants took part of a "group, club, cult" to use "repressive tactics" to violate Plaintiff's rights as part of a campaign to discriminate against him for his sex crime conviction. Presently pending before this Court is certain Defendants' motion to dismiss for Plaintiff's failure to state a claim upon which relief may be granted. (Doc. 25).[1] For the reasons

---

[1] The motion was filed by Defendants Mull, Smith, Mangan, Kaskel, Palmer, Cimakasky, Ricci, Starck, Perhach, McKeown, Everett, Zagata, *(footnote continued on next page)*

discussed below, the Court will **GRANT** Commonwealth Defendants' motion and dismiss all claims with prejudice.

## I.    BACKGROUND

On November 8, 2022, Plaintiff, Andy Ortiz, began this action by filing his original Complaint in the United States District Court for the Eastern District of Pennsylvania. (Doc. 1). The original Complaint resembled a grievance letter. So, on November 28, 2022, the Honorable Gerald J. Pappert ordered the Plaintiff to file an amended complaint that "identif[ies] all defendants in the caption of the amended complaint in addition to identifying them in the body of the amended complaint." (Doc. 4, p. 3). Judge Pappert went on to state that the amended complaint "shall state the basis for Ortiz's claims against each defendant" and must be "a complete document that does not rely on the initial letter Complaint or Request, or other papers filed in this case to state a claim." (*Id.*).

---

Malenovitch, Argenio, Jaleel (AJ) Bin Abdur Rasheed, Newell, Simpson, Havard, Grohowski, Shistle, Newhart, Sopata, Conrad, Inniss, Sulim, Bohinski, Austin, Klick, Edward, Wilson, Guzenski, Jeddic, Rittenhouse, Contreras, Ransom, Hogan, Cardinale, Goyne, Raitter, Dukes, Letinski, Gavlick, Holton, Tamkus, Adamson, Tilletski, and Klapat (herein "Commonwealth Defendants").

On December 7, 2022, Plaintiff filed his First Amended Complaint, but failed to submit a Motion for Leave to Proceed *in forma pauperis*. (Doc. 5). Plaintiff subsequently submitted his Second Amended Complaint and the necessary Motion for Leave to Proceed *in forma pauperis* on December 14, 2022. (Docs. 6 and 7). On February 2, 2023, the case was transferred to this Court. (Doc. 11). After reviewing the Second Amended Complaint, Commonwealth Defendants filed a Motion for a More Definite Statement and a supporting brief. (Docs. 21 and 22).

Plaintiff filed a Third Amended Complaint in response to Commonwealth Defendants' Motion. (Doc. 23).[2] The Third Amended Complaint groups several Commonwealth Defendants together with prison inmates, and generally accuses them all of acting in unison in violating Plaintiff's constitutional rights.

---

[2] Plaintiff's Third Amended Complaint does not contain the same Defendants as his First and Second Amended Complaints. Plaintiff added Defendants Moore and Varner without effecting service. Plaintiff also mentions "Defendant Dr. Loran. H" as the alleged "Head of Department of Corrections of (PA) Director/Commissioner" who is neither found on the case caption nor the docket. (Doc. 23, p. 2).

Plaintiff's complaint is difficult to follow. Nevertheless, since Plaintiff is proceeding *pro se*, the Court will construe the Third Amended Complaint liberally as containing the following factual allegations.

In early September 2022, while Plaintiff was an inmate at SCI-Dallas, "all correctional officer[s], lieutenants, sergeants, PSS staff" allegedly took part "in a group or some form of club or cult or cli[que]" to share information amongst themselves and other prisoners that Plaintiff was "booked for a rape case or sex offense" and, consequently, discriminated against him. (Doc. 23, p. 3). Based on Plaintiff's belief Record Specialist Defendant Newell, rather than providing Plaintiff with his requested records relating to one case, produced an unrequested "status sheet" "of all charges [Plaintiff] was locked up for" and shared it with other prison guards. (*Id.*, p. 5). Subsequently, this group "work[ed] together as a team to burn [Plaintiff]" by depriving him of shower, yard and law library time and "promote inmates to repeat[edly] walk past [his] door and kick or bang and make verbal demands or threats while saying [he's] a faggot, a bitch … a land shark, rapest [sic], child molestor [sic], kitty fucker or sex offender that [has] to be on Megan's law."[3] (*Id.*).

---

[3] Pennsylvania's Megan's Law, 42 Pa.C.S §9799.32(1) and §9799.67(1), requires the Pennsylvania State Police to create and maintain
*(footnote continued on next page)*

When Plaintiff raised his concerns with "[Program Review Committee]/Administration staff such as deput[ies] and captains," they ignored him. (*Id.*, pp. 3, 4).

Around October 2022, Plaintiff had "issues," "altercations" and fights with his cellmate, Defendant Charles Johnson, which led him to be placed temporarily in the Restricted Housing Unit (RHU). (Doc. 23, p. 4). Consequently, Plaintiff requested a cell transfer and when DOC asked him about his relationship with Defendant Johnson, Plaintiff allegedly refused to discuss it, thought it best "to hide all facts" and not be "label[ed] as a (rat)" to avoid, presumably, repercussion from other inmates. (*Id.*). Despite having "hid[den] all the facts," Plaintiff believed that Defendants Newhart, Starck and Rasheed told a couple of Defendant Johnson's "homeboys" about the strained relationship, causing another fight between Defendant Johnson and Plaintiff on October 22, 2022. (*Id.*). Plaintiff alleges that Defendant Newhart witnessed the fight but failed to report it. (*Id.*).

---

a registry of persons who reside, or is transient, work/carry on a vocation, or attend school in the Commonwealth of Pennsylvania and who have either been convicted of, entered a plea of guilty to, or have been adjudicated delinquent of certain Sexual Offenses in Pennsylvania or another jurisdiction.

As a result of the altercation, Plaintiff was moved to another unit. (Doc. 23, p. 4). Plaintiff was not allowed to bring certain personal property with him and contends that DOC staff failed to properly maintain his property, allowing another inmate, Defendant Earl Young, to steal and sell it. (*Id.*, p. 6).[4]

In sum, apart from the above specific incidents, Plaintiff's Third Amended complaint broadly accuses a host of prison officials[5] of working together to tell other inmates that he was a convicted sex offender, encouraging other inmates to kick his cell door and call him names and collude to, at unspecified times, deny him showers, toothpaste, yard time, clothes, and access to the law library. (Doc. 23, p. 7).

In response, the Commonwealth Defendants moved to dismiss this action with prejudice arguing that Plaintiff failed to state a claim upon which relief can be granted and allowing him to amend his complaint a fourth time would be futile. (Doc. 25). With briefs filed (Docs. 27, 28, 29, and 33), the motion is now ripe for review.

---

[4] The property allegedly stolen comprised of a television and "green headphones." (Doc. 23, pp. 4-5).

[5] Plaintiff provides 51 defendant names, 49 of which are affixed with various acronymized titles that, presumably, belong to prison officials. (Doc. 23, pp. 1-2).

## II.    <u>LEGAL STANDARD</u>

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the

claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual

- 8 -

allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal*, 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, *pro se* complaints must still adhere to the Federal Rules of Civil Procedure and contain "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The Court need not accept "unsupported conclusions and unwarranted inferences," nor "legal conclusion[s] couched

as ... factual allegation[s]." *Castleberry v. STI Grp.*, 863 F.3d 259 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

The court should generally grant leave to amend a pleading before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). However, dismissal without leave to amend is justified on the grounds of bad faith, undue delay, prejudice, or futility. *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

## III.    **DISCUSSION**

Commonwealth Defendants contend that the claims against them should be dismissed because Plaintiff fails to allege the necessary facts to state a claim upon which relief can be granted. (Doc. 27, p. 16). The Court is constrained to agree.

Each ground for dismissal will be reviewed below, in turn.

## A. Lack of Personal Involvement

Commonwealth Defendants argue that all §1983 claims against Commonwealth Defendants who were not personally involved in violating Plaintiff's constitutional rights must be dismissed. The Court agrees.

Section 1983 is the vehicle for plaintiffs to seek redress for the deprivation of federally protected constitutional rights, such as those provided by the First, Eighth and Fourteenth Amendments. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. §1983. "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)).

To establish personal liability against a defendant in a §1983 action, the state actor must have played an affirmative part in the alleged misconduct in order to be subject to liability. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Chavarriaga v. New Jersey Department of Corrections*, 806 F.3d 210, 222 (3d Cir. 2015); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Chincello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). In essence, the state actor must have a personal involvement.

Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence; however, "[a]llegations of knowledge and acquiescence must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. Additionally, a plaintiff must show that "some affirmative conduct by the supervisor played a role in the discrimination." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990); *see also Rizzo*, 423 U.S. at 377 (1976) (supervising officials do not violate the constitutional rights of the victims unless they have played an "affirmative part" in the misconduct). It is insufficient to survive a motion to dismiss for a complaint by merely hypothesizing about a defendant's personal involvement without any factual support, nor is it required for a court to assume that the plaintiff can use the discovery process to prove facts not alleged. *Evancho v. Fisher*, 423 F.2d 347, 353-354 (3d Cir. 2005).

### i.   Defendants Mull, Mangan and Klick

Here, Plaintiff fails to plead the necessary facts to demonstrate the personal involvement of a number of Commonwealth Defendants. The Third Amended Complaint does not state any specific actions Defendants Mull, Mangan, or Klick personally took to violate his constitutional rights. In fact, other than being named on the caption (along with another 48 defendants), these defendants are not even mentioned in the body of the complaint. Thus, all §1983 claims against them are dismissed.

### ii.   Defendants Palmer, Perhach, Zagata, Malenovitch, Simpson, Havard, Shistle Sopata, Edward, Wilson, Cardinale, Raitter, Letinski, Holton, Tamkus, Adamson, Tilletski, and Klapat

Plaintiff generally alleges that Defendants Palmer, Perhach, Zagata, Malenovitch, Simpson, Havard, Shistle Sopata, Edward, Wilson, Cardinale, Raitter, Letinski, Holton, Tamkus, Adamson, Tilletski, and Klapat called him a rapist and similar names, encouraged inmates to harass him, and refused to provide him access to the law library. (Doc. 23, pp. 5, 7). Plaintiff also accuses this group of refusing him yard time and showers unless he gave

away a portion of his food to other inmates. (*Id.*).[6] However, Plaintiff has failed to plead any of the particulars of how and when these actions took place, who specifically undertook which action, or the process by which he sought a remedy. Without the appropriate particularity of how this group of Defendants was personally involved in violating Plaintiff's constitutional rights, all §1983 claims against them are dismissed. *Rode*, 845 F.2d at 1207. Furthermore, given this is Plaintiff's fourth opportunity to provide specificity, leave to amend would be futile, *In re Merck*, 493 F.3d at 400, and dismissal is with prejudice.

### iii. Defendants Grohowski, Inniss, Sulim and Kaskel

Plaintiff accuses Defendants Grohowski and Inniss of knowing that he was denied yard time, showers, clothes and paper work, (Doc. 23, p. 5), and accuses Defendants Kaskel, Grohowski and Sulim of managing the unit where inmate Defendant Young stole Plaintiff's property. (*Id.*, p. 6). Neither of these alleged acts constitute personal involvement for the purposes of §1983. Even an official receiving and reviewing a letter or request slip is

---

[6] Plaintiff claims that giving away a portion of food to receive better treatment from other inmates is part of a "land shark program." (Doc. 23, p. 3). His participation in such program is allegedly the reason he has gained the monicker "land shark." (*Id.*).

insufficient to establish personal involvement (*i.e.*, failure to respond or react does not establish that the official endorsed or acquiesced in the conduct at issue). *Alexander*, 2010 WL 1257709 at *15-16; *Bullock v. Horn*, 2000 WL 1839171 at *5 (M.D. Pa. 2000) ("Merely asserting that Plaintiff sent letters to these two defendants will not suffice. Indeed, it would be anomalous to suggest that a prisoner could name as a Defendant any government official whatsoever, no matter how far removed in the chain of authority from the actual conduct in question, simply by sending that official a letter."); *Okey v. Strebig*, 2012 WL 5439042 at *8 (M.D. Pa. 2012). Plaintiff has failed to show that "some affirmative conduct by the supervisor played a role in the discrimination." *Andrews*, 895 F.2d at 1478. Accordingly, since Plaintiff has failed to describe what actions Defendants Kaskel, Grohowski, Inniss, and Sulim took, when those actions occurred, or what capabilities these Defendants had to stop any constitutional violations, Plaintiff cannot establish they were personally involved in violating his constitutional rights and all §1983 claims against them are dismissed.

### iv.    Defendants Austin and Jeddic

Plaintiff alleges that Defendants Austin and Jeddic knew he was being denied yard time and showers, and refused to report Plaintiff's issues and

concerns (Doc. 23, pp. 5-6). First, Plaintiff does not allege when these events occurred. Second, his assertions are beguiled by his own admission that he was permitted to grieve his concerns "to the highest level." (*Id.*, p. 4). Lastly, Plaintiff does not allege that Defendants Austin and Jeddic personally denied him any resources, only that they knew he was denied resources and did not report it. As previously discussed, knowledge of an issue or event, on its own, is insufficient to establish personal involvement for §1983 cases. *Alexander*, 2010 WL 1257709 at *15-16; *Bullock*, 2000 WL 1839171 at *5. Accordingly, all §1983 claims against Defendants Austin and Jeddic are dismissed.

### v.    Defendant McKeown

Plaintiff alleges that Defendant McKeown, at an unspecified time, in relation to an unspecified incident, threatened to "bury [him] in the hole" for two years. (Doc. 23, p. 6). However, Plaintiff does not allege that Defendant McKeown took any other actions. Statements and verbal threats, without action, cannot as a matter of law violate a prisoner's rights. *Rodriguez v. Wetzel*, 2015 WL 1033842 at *8 (W.D. Pa. 2015) ("it is well established that the use of words, no matter how violent, vulgar or unprofessional, is not actionable under 42 U.S.C. §1983") (citing *Dunbar v. Barone*, 487 Fed. Appx.

723 (3d Cir. 2012)). Accordingly, having failed to allege that Defendant McKeown was personally involved in violating Plaintiff's constitutional rights, all §1983 claims against him are dismissed.

### vi.    Defendant Newell

Plaintiff alleges that Records Specialist Defendant Newell provided him a different document (a "status sheet") than what he requested ("a copy of all charge[s] only that pertain to one case"). (Doc. 23, p. 5). No further allegations are raised against Defendant Newell. Rather, Plaintiff states that he has reason to believe someone read the "status sheet" before he received it because it "cause[d] these guards to act in a way of treating [him] different." (*Id.*). This is nothing more than Plaintiff's speculation and this Court is not required to assume that the Plaintiff can use the discovery process to prove facts not alleged. *Evancho*, 423 F.2d at 353-354. Moreover, being provided an incorrect document in response to a request does not amount to a constitutional violation. *Rodriguez*, 2015 WL 1033842 at *8 ("with respect to showing that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that 'was sufficient to deter a person of ordinary firmness from exercising his rights.'") (quoting *Allah v. Seiverling*, 229 F.3d 220, 225

(3d Cir.2000). Accordingly, all §1983 claims against Defendant Newell are dismissed.

> **vii.    Defendants Lieutenant Conrad, Lieutenant Cimakasky, Lieutenant Guzenski, Lieutenant Gavlick, Sergeant Rittenhouse, Sergeant Ricci, former Sergeant Eugene Everett, Major Goyne, Deputy Superintendent Contreras, Deputy Superintendent Bohinski, Corrections Superintendent's Assistant Hogan[7] and Superintendent Kevin Ransom (herein, "Supervisor Defendants")**

Federal civil rights claims brought under §1983 cannot be premised on a traditional theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). Rather, §1983 supervisory liability is available when: (1) the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge

---

[7] In his Third Amended Complaint, Plaintiff alleges that Defendant Hogan is "head of SCI-Dallas … responsible for the welfare and safety" of inmates. (Doc. 23, p. 6). However, Commonwealth Defendants argue that Defendant Hogan is the assistant to the Superintendent and does not have a supervisory role. Either way, Commonwealth Defendants also argue that Plaintiff fails to plead the necessary facts to establish Defendant Hogan's personal involvement for §1983 claims because Plaintiff only asserts that Defendant Hogan knew about the alleged constitutional violation but not that she had taken any affirmative conduct. (*Id.*). The Court agrees.

of and acquiesced in [their] subordinates' violations"; or (2) policymakers are shown to have acted with deliberate indifference when "establish[ing] and maintain[ing] a policy, practice or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). A defendant shows deliberate indifference if they "acted or failed to act despite having knowledge that her actions or inaction … would subject the inmate to a substantial risk of serious harm." *Chavarriaga*, 806 F.3d at 227 (citing *Farmer v. Brennan*, 511 U.S. 825, 840 (1994)).

Here, Plaintiff does not specify any policies, customs, or practices the Supervisory Defendants maintained. Therefore, Plaintiff is left with needing to prove that each of the Supervisory Defendants participated in violating his constitutional rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced to their subordinates' violation and had "some affirmative conduct … play[ ] a role in the discrimination." *Andrews*, 895 F.2d at 1478. As described below, Plaintiff fails to meet his burden and all §1983 claims against the Supervisory Defendants are dismissed.

- 19 -

### a) Defendants Lieutenant Conrad, Lieutenant Cimakasky, Lieutenant Guzenski, Lieutenant Gavlick, Sergeant Rittenhouse, Sergeant Ricci, former Sergeant Eugene Everett, Major Goyne, Deputy Superintendent Contreras, and Deputy Superintendent Bohinski

Plaintiff alleges that the aforementioned Defendants supervised "K-Block," which was the restrictive housing unit in which Plaintiff was temporarily held. (Doc. 23, pp. 5-7). He alleges that those Defendants knew about the harassment and denial of necessities. (*Id.*). Furthermore, Plaintiff alleges that each of these Defendants told him, at different and unspecified times, that he was a target due to his conviction and that he should stop reporting to correctional officers because it would "piss them off." (*Id.*). Such are the accusatory strokes Plaintiff has brushed with in his Third Amended Complaint. Yet, despite the number of defendants these brush strokes have reached, none of them hold any details or particulars sufficient to make a §1983 claim. Indeed, this Court cannot surmise when such claims were made, by whom, nor what actions any of the Defendants took to violate Plaintiff's constitutional rights. Accordingly, all §1983 claims against such Defendants are dismissed.

**b) Defendants Corrections Superintendent's Assistant Hogan and Superintendent Kevin Ransom**

Plaintiff alleges that the aforementioned Defendants were responsible for the oversight and well-being of the inmates at SCI-Dallas. (Doc. 23, pp. 3, 6). However, nowhere in Plaintiff's Third Amended Complaint does he specify how, or even if, Defendants Hogan and Ransom knew about the alleged constitutional violations. As explained above, to demonstrate the personal involvement of a supervisory defendant in a §1983 claim, the plaintiff must either identify a specific policy, custom or practice maintained or show that the defendant supervisor personally participated in violating plaintiff's rights, directed others to do so, or, as the person in charge, had knowledge of and acquiesced in their subordinates' violations. *A.M. ex rel. J.M.K.*, 372 F.3d at 586; *see also Rizzo*, 423 U.S. at 377. As Plaintiff established none of these, all §1983 claims against Defendants Hogan and Ransom are dismissed.

**B. First Amendment (Retaliation) Claims**

To state a prima facie case of retaliation in violation of the First Amendment, a plaintiff must establish the following elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3)

a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). To amount to retaliation, the conduct must be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quotation marks and citation omitted). "Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting— whether activity is 'protected' or an action is 'adverse' will depend on context...." *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). The fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates. *See Pell v. Procunier*, 417 U.S. 817, 822-23 (1974). Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.* at 822.

In his Third Amended Complaint, Plaintiff alleges the Commonwealth Defendants retaliated against him for filing lawsuits and grievances related to staff misconduct. The filing of grievances has been viewed by certain

courts, including this one, as a protected activity under the First Amendment. *Jackson v. Knapp*, *et al.*, Civ. No. 3:22-0138, Doc. 39, at *37 (M.D. Pa. Oct. 30, 2024) (J. Mannion); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). However, as explained above, there must also be a retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights and a causal link between the constitutionally protected conduct and that retaliatory action. *Thomas*, 463 F.3d at 296. Furthermore, the alleged retaliator must have been aware of the protected speech in order to take action in response. *Ambrose v. Township of Robinson*, 303 F.3d 488, 494 (3d Cir. 2002). Thus, Plaintiff must present evidence that each Defendant knew about his grievances in order to show a causal link between his grievances and the subsequent adverse decisions or actions taken. *See Evans v. Rozum*, 2009 WL 5064490 at *21-22 (W.D. Pa. Dec. 17, 2009)); *Booth v. Pence*, 354 F.Supp.2d 553, 561 (E.D. Pa. 2005).

Here, Plaintiff has not demonstrated that causal link nor the requisite knowledge. Plaintiff states that the retaliation is based, in part, on several lawsuits he filed in the "Eastern District of PA," but he does not provide any

further details. (Doc. 23, p. 2, ¶3).[8]  Plaintiff alleges that the retaliation was based on grievances, including Grievance No. 1006523, (*Id.*, p. 4), however, he does not describe which Defendants were involved in the lawsuits or grievances. Furthermore, Plaintiff does not furnish this Court with any factual allegations of how Defendants even became aware of the lawsuits and grievances. Accordingly, Plaintiff fails to demonstrate how any Commonwealth Defendants had cause to retaliate against him and his First Amendment (retaliation) claim is dismissed.

---

[8] Commonwealth Defendants argue that to the extent that Plaintiff inadvertently asserts a First Amendment (access to the courts) claim because he was not able to access the law library, that claim must also be dismissed since Plaintiff does not provide any further details regarding the several lawsuits he filed in the "Eastern District of PA." (Doc. 23, p. 2, ¶3). The Court agrees. To succeed on an access to the courts claim, a plaintiff must allege "actual injury, such as the loss or rejection of a legal claim," *Oliver v. Fauver*, 118 F.3d 175, 177 (3d Cir. 1997), and facts showing that this lost or rejected claim was nonfrivolous or arguable. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). The plaintiff must describe the underlying claim well enough to show that it is based on "more than mere hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002). Here, Plaintiff does not describe his lost claims at all. Accordingly, any First Amendment (access to the court) claims based on the denial of law library services are dismissed.

## C. Eighth Amendment (Conditions of Confinement and Failure to Protect) Claims

### i. Conditions of Confinement

The Eighth Amendment prohibits any punishment which violates civilized standards of humanity and decency. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (citing *Young v. Quinlan*, 960 F.2d 351, 361 (3d Cir. 1992)). To succeed on a claim that the conditions of confinement were violative of a plaintiff's Eighth Amendment rights, "a plaintiff must demonstrate both that (1) he has been denied 'the minimal civilized measure of life's necessities,' and (2) that prison officials acted with deliberate indifference to those conditions." *Whitney v. Wetzel*, 649 F. App'x 123, 127 (3d Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994)).

The first prong is objective. *Griffin*, 112 F.3d at 709. While prison conditions are often less than ideal, only extreme deprivations of life's basic necessities are sufficient to violate the Eighth Amendment's prohibition on cruel and unusual punishment. *Farmer*, 511 U.S. at 834 (1994); *Dockery v. Beard*, 509 Fed. Appx. 107, 112 (3d Cir. 2013). Prison officials have a duty to provide humane conditions of confinement, but the constitution does not mandate comfortable prisons. *Carson v. Mulvihill*, 488 Fed. Appx. 554, 560 (3d Cir. 2012). Indeed, prison officials must ensure that inmates receive

- 25 -

adequate food, clothing, shelter and medical care and they must take "reasonable measures" to guarantee inmate safety from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 832.

The second prong is subjective. A prison official cannot be found liable under the Eighth Amendment unless he acts with deliberate indifference; that is: "unless the official knows of and disregards an excessive risk to inmate health or safety." *Brennan*, 511 U.S. at 837-38; *Hamilton v. Leavy*, 117 F.3d 742, 476 (3d Cir. 1997). Deliberate indifference requires obduracy and wantonness that constitutes recklessness or a conscious disregard of a serious risk. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Brennan*, 511 U.S. at 842).

Here, Plaintiff alleges that he was denied food, showers, yard time and clothes, but fails to plead these deprivations with any specificity. (Doc. 23, p. 5). The degree to which Plaintiff was deprived of these reasonable measures matters greatly for the objective test of the first *Whitney* prong. 649 F. App'x at 127.  Only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim, *Lindsey v. O'Connor*, 327 Fed. Appx. 319, 321 (3d Cir. 2009), and the occasional denial of a shower or exercise does not rise to the level of an Eighth Amendment violation. *See, e.g., Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir.1992) (forty-five minutes of exercise per week not

constitutionally infirm); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir.1989) (the denial of outdoor recreation for thirteen days does not constitute cruel and unusual punishment); *Juaquee v. Pike County Correctional Facility Employees*, 2012 WL 7005254 at *8 (M.D. Pa. 2012) ("'the alleged denial of adequate showers ... during [a] brief stay [of 15 days] in [prison] was [not] sufficiently serious to deprive [an inmate] of the 'minimal civilized measure of life's necessities,'' … and thus did not violate the Eighth Amendment.") (quoting *Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir.2010)).

Reading the Third Amended Complaint, the Court is led to believe that Plaintiff does receive exercise and showers but has to, in exchange, sometimes "give up [his] food tray in the morning" to other inmates and sometimes receives food portions that are "too low." (Doc. 23, p. 5). But "[e]ven a minimal provision of time for exercise and recreation may satisfy constitutional requirements," *Fortune*, 379 F. App'x at 122, and only a substantial deprivation of food sets forth a viable Eighth Amendment claim. *Lindsey*, 327 Fed. Appx. at 321. Thus, while these described conditions are not ideal, they do not rise to the level of an Eighth Amendment violation.

Furthermore, Plaintiff's allegations that Commonwealth Defendants did not prevent other inmates from banging on his cell door and calling him

names also are insufficient to state an Eighth Amendment claim. *Whitney*, 649 Fed. Appx. at 123 (RHU inmates banging on toilets and sinks resulting in excessive noise that prevented plaintiff from sleeping does not meet objective criteria of conditions of confinement claim); *McClintic v. Pennsylvania Dep't. of Corrections*, 2013 WL 5988956, at *12 n.23 (E.D. Pa. Nov. 12, 2013) (loud noises and throwing of feces appear to be typical of conditions of confinement). Thus, failing to state a plausible Eighth Amendment violation, Plaintiff's Eighth Amendment claim regarding his conditions of confinement is dismissed.

### ii.    Failure to Protect

For an inmate to prevail on an Eighth Amendment failure-to-protect claim he must demonstrate that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison officials involved had a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834. Specifically, the inmate must show that the official knows of and disregards an excessive risk to inmate health or safety. *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir.1997).

Here, Plaintiff generally alleges all the Commonwealth Defendants failed to protect him from his cellmate, Defendant Johnson. (Doc. 23, p. 4).

However, he only makes purported factual allegations against Defendants Newhart, Rasheed, and Starck. (*Id.*, pp. 4, 7). Plaintiff lodges two accusations: (1) that Defendants Newhart, Rasheed, and Starck informed Defendant Johnson, and several other inmates, that Plaintiff requested a transfer to another unit and this, Plaintiff believes, led to a fight between him and his cellmate; and (2) that Defendant Newhart saw the two cellmates fighting but did not report the incident. (*Id.*).

With respect to the first accusation, Plaintiff failed to show how the Commonwealth Defendants knew he was at risk, let alone a substantial one. In his Third Amended Complaint, Plaintiff admits that when prison officials asked him about his relationship with cellmate Defendant Johnson, rather than telling them of any issues or risks he faced, Plaintiff "hid[ ] all of the facts" from those officials so he would not "be label[ed] as a (rat)." (Doc. 23, p. 4). Now, Plaintiff blames those officials for not taking any action to protect him. This is not how it works. If a plaintiff refuses to inform prison officials of a serious risk of harm he faces, he cannot then retroactively accuse them of not taking any action to mitigate that risk.

With respect to the second accusation, not reporting a prison fight, without more, is insufficient to raise a failure to protect Eighth Amendment claim. The Supreme Court has recognized, "prison officials have a duty ... to

- 29 -

protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (quoting *Cortes–Quinones v. Jimenez Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. To state a claim under the Eighth Amendment for failure to protect, a plaintiff bears the burden of establishing prison officials were "deliberately indifferent" to the fact that an inmate was in serious peril of being harmed. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (citing *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005)). In other words, in order to prevail, Plaintiff must demonstrate that he "'was at serious risk of being harmed [and a prison official] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Id.* (quoting *Board*, 394 F.3d at 478). "[C]onduct that simply amounts to 'mere negligence or inadvertence' is insufficient to justify the imposition of liability." *Id.* (citations omitted).

Here, Plaintiff does not provide any details regarding the alleged fight nor Defendant Newhart's actions during or after the fight. The Court does not know whether Defendant Newhart was present for the entire fight or came at the tail end of it. The Court does not know whether Defendant Newhart had an opportunity to easily stop the fight but decided against it. Worse, the Court

does not even know whether Defendant Newhart actually failed to stop the fight.[9] All that is known is that Defendant Newhart allegedly failed to report the fight after witnessing it. This is simply insufficient to rise to the level of deliberate indifference. Accordingly, Plaintiff's failure to protect Eighth Amendment claim is dismissed.

### D. Fourteenth Amendment (Loss of Personal Property and Equal Protection) Claims

#### i.   Loss of Personal Property

A significant portion of Plaintiff's Third Amended Complaint focuses on the loss of his personal property after he was relocated to a different cell on October 23, 2023. (Doc. 23, p. 4). He accuses Defendants Dukes, Rasheed, Starck, Argenio, and Newhart of not allowing him to pack his personal belongings and failing to properly catalogue the items, which allowed Defendant Young to steal or sell the items. (*Id.*, pp. 4-5). From this loss of

---

[9] For all the Court knows, Defendant Newhart may very well have stopped the fight when he arrived at the scene but just failed to report it.

personal property, Plaintiff argues that the Commonwealth Defendants violated his due process rights under the Fourteenth Amendment.[10]

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, §1. However, the deprivation of inmate property by prison officials does not give rise to a cognizable due process claim if the prisoner is afforded an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Third Circuit has held that adequate post-deprivation remedies include the ability to file a state tort action or use of the prison's grievance process. *Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010); *Tillman v. Lebanon Cnty. Corr. Fac.*, 221 F.3d 410, 422 (3d Cir. 2000).

---

[10] Plaintiff asserts that these actions violate an "Article 17" right to not be arbitrarily deprived of property. (Doc. 23, p. 7). Commonwealth Defendants argue, to which this Court agrees, that Plaintiff is likely referring to either: (1) the European Union's Charter of Fundamental Rights, Title II, Article 17 – Right to Property (available at https://fra.europa.eu/en/eu-charter/article/17-right-property#:~:text=Protection%20of%20property-,Every%20natural%20or%20legal%20person%20is%20entitled%20to%20the%20peaceful,general%20principles%20of%20international%20law); or (2) the United Nations Declaration of Human Rights, Article 17 (available at https://www.un.org/en/about-us/universal-declaration-of-human-rights#:~:text=Article%2017,arbitrarily%20deprived%20of%20his%20property). Given the Plaintiff is *pro se* and has raised numerous constitutional claims, the Court will construe this claim regarding a deprivation of property as falling under the Fourteenth Amendment.

The existence of either of these post-deprivation remedies therefore "forecloses any due process claim ... even if [the] inmate is dissatisfied with the result of the process." *Mearin v. Folino*, 2013 WL 5332120, at *7 (W.D. Pa. Sept. 23, 2013) (quoting *Iseley v. Horn*, 1996 WL 510090, at *6 (E.D. Pa. Sept. 3, 1996).

Here, Plaintiff claims he informed Commonwealth Defendants of the theft and grieved the issue "to the highest level." (Doc. 23, p. 4). He also does not allege any procedural issues with the grievance system. Accordingly, because Plaintiff does not allege that he was denied an adequate post-deprivation remedy, his Fourteenth Amendment claim for loss of property is dismissed.

### ii.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). The general rule is that the state action is valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate government interest. *City of Cleburne*, 473

U.S. at 440. This general rule only gives way when the classification is suspect, in which case a higher level of scrutiny applies. *Id.*

Plaintiff alleges Commonwealth Defendants violated his Fourteenth Amendment Right to equal protection by discriminating against him for being a sex offender and a gay man. (Doc. 23, p. 7).[11] Yet, Plaintiff fails to allege how the Commonwealth Defendants actions were related to either of these categories or identify how others in this group were similarly affected by Commonwealth Defendant's actions.

Plaintiff's alleged Equal Protection violation is more akin to a "class of one" claim. To qualify as a class of one, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated; (2) the defendant did so intentionally; and (3) there was no rational basis for the difference in the treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). But a lack of evidence that a defendant has treated the plaintiff any differently than other members of his class is fatal to a class of one equal protection claim. *Id.* at 239. Here, Plaintiff's Third Amended Complaint fails to describe how he was treated differently to others in his similar situation.

---

[11] "Sex offenders" are not a suspect class.

Therefore, Plaintiff's Fourteenth Amendment claim regarding equal protection is dismissed.

### E. State Tort Claim of Intentional Infliction of Emotional Distress

As a general matter, subject only to ten specific statutory exceptions, the doctrine of sovereign immunity bars state law tort claims like those alleged here, since Commonwealth employees are immune from liability for either negligence or intentional torts. *McGrath v. Johnson*, 67 F. Supp. 2d 499 (E.D. Pa. 1999), *aff'd*, 35 F. App'x 357 (3d Cir. 2002) (citing 1 Pa. Cons. Stat. Ann. §2310; 42 Pa. Cons. Stat. Ann. §8522). Specifically, courts have repeatedly concluded that claims for intentional infliction of emotional distress brought against Commonwealth employees arising out of actions taken by those employees within the scope of their official duties are barred by sovereign immunity. *See e.g., Ray v. Pennsylvania State Police*, 654 A.2d 140, 141 (Pa. Commw. Ct. 1995), *aff'd*, 544 Pa. 260, 676 A.2d 194 (1996) (citing *Pickering v. Sacavage*, 164 Pa. Cmwlth. 117, 642 A.2d 555, appeal denied, 539 Pa. 671, 652 A.2d 841 (No. 275 M.D. Alloc. Dkt., filed December 5, 1994)). Given the case law, and Plaintiff's failure to plead facts demonstrating Commonwealth Defendants acted outside of their employment, Plaintiff's intentional infliction of emotional distress claim is dismissed.

### F. Remaining Claims Against Inmate Defendants Young and Johnson

Plaintiff has named inmates Defendants Young and Johnson in the caption of his Third Amended Complaint. (Doc. 23, p. 2). These Defendants are not state actors and Plaintiff has failed to specify if, or how, these Defendants violated his constitutional rights. At best, Plaintiff has stated "each defendant acted under color of state law." (*Id.*). The Court will review these claims despite the fact that Defendants Young and Johnson have failed to respond because these claims raise serious jurisdictional issues for which this Court is permitted to raise *sua sponte*. *See Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte* …"); *Johnson v. United States*, 2009 WL 2762729, at *2 (M.D. Pa. Aug. 27, 2009). Beyond that, where a plaintiff has been granted leave to proceed *in forma pauperis*, as here, a district court may dismiss a claim which is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989), *Douris v. Middleton Township*, 293 Fed. Appx. 130, 132 (3d Cir. 2008).

- 36 -

To successfully plead a §1983 conspiracy claim, plaintiff "must prove that persons acting under color of state law conspired to deprive him of a federal protected right." *Ashton v. City of Uniontown*, 459 F. App'x 185, 190 (3d Cir.2012) (citations omitted). Here, Defendants Young and Johnson are private parties and not employed by any state agency. "Only in rare situations will a private party be considered a state actor." *Almuhsin v. Warden of Dauphin Cnty. Prison*, 2016 WL 1076835, at *3 (M.D. Pa. Mar. 18, 2016) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 933 (1982)). Such a situation exists where a private party conspires with an individual employed by the state. *Id.*; *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ("Private persons, jointly engaged with state official in the challenged action, are acting 'under color' of law for purposes of §1983 actions.").

In his Third Amended Complaint, Plaintiff presents no allegations establishing such a conspiracy. "An inmate of a state correctional facility, unless involved in a conspiracy with state actors, cannot be sued under §1983." *Almuhsin*, 2016 WL 1076835 at *3 (citing *Simonton v. Tennis*, 437 F. App'x 60. 62 (3d Cir July 13, 2011); *Lane v. Walsh*, 2015 WL 3866043, at *6 (M.D. Pa. June 13, 2015)). Furthermore, Plaintiff has set forth no other viable jurisdictional basis for suing Defendants Young and Johnson. Consequently, the claims against them will be dismissed.

IV.    **CONCLUSION**

Based on the foregoing, the Court will **GRANT** Commonwealth Defendants' motion to dismiss (Doc. 25) and dismiss all claims with prejudice. An appropriate order follows**.**


                                    *s/ Malachy E. Mannion*
                                    **MALACHY E. MANNION**
                                    **United States District Judge**

**Dated:  November 5, 2024**
23-214-01

- 38 -